UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JANET BROWN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS AND THIRD PARTY ACTION | Case No. 3:19-cv-00207-MMD-CSD<br><br>Member Cases:<br>3:19-cv-00383-MMD-WGC<br>3:19-cv-00424-MMD-WGC<br>3:19-cv-00418-MMD-WGC<br><br>POST-REMAND BENCH ORDER ON LIABILITY |

## I.  SUMMARY

This consolidated case arises from a fatal plane crash at the Reno-Tahoe International Airport ("RNO"). Plaintiffs[1] sued the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671-2680,[2] alleging that the negligence of Federal Aviation Administration ("FAA") air traffic controllers at RNO was the sole cause of the crash. The Court held a bench trial (the "Trial"). (ECF Nos. 148-156 (minutes of proceedings); *see also* ECF Nos. 158-165 (trial transcripts).) The Court ruled in the United States' favor following the Trial (ECF No. 177 ("Bench Order")) and later

---

[1] Plaintiffs are the Brown Parties, consisting of Janet Brown, Laura Melendez, John Bradley Brown, the estate of John Brown aka Johnny Brown, and Flying Start Aero, LLC (ECF No. 170 at 1-2), and the Elliker Parties, consisting of Jocelyn Elliker, Carrie Romo, as the parent and guardian ad litem for B.E., Megan Romo Elliker, individually and as the Executor of the Estate of James Elliker, Dustin Elliker, and Katelynn Hansen (ECF No. 171 at 1). The Court refers to the two sets of Plaintiffs as the Brown Parties and the Elliker Parties herein.

[2] The Court has jurisdiction over this case under this statute. (ECF Nos. 115 at 3, 170 at 24, 172 at 5.) *See also, e.g.*, *Hamilton v. United States*, 497 F.2d 370, 372 (9th Cir. 1974) (noting case alleging negligence of air traffic controllers arose under FTCA but not noting a lack of jurisdiction). Venue is also proper because the crash occurred at RNO. *See* 28 U.S.C. § 1402(b).

denied Plaintiffs' motions to alter or amend (ECF No. 210). Plaintiffs appealed. (ECF Nos. 199, 200, 211, 213.) The United States Court of Appeals for the Ninth Circuit vacated the Bench Order, in part, and remanded for further proceedings. (ECF No. 215 ("Memorandum Decision").) This post-remand bench order reflects the Court's findings following the Ninth Circuit's remand. The Court first describes below the procedural history pertinent to the findings of fact and conclusions of law farther below. And then, as further described below, the Court now finds that John Brown the pilot and Gregory Nicholl the air traffic controller were both negligent and the concurrent causes of James Elliker and Brown's deaths. This case will accordingly proceed to determine the amounts of damages Plaintiffs suffered, and the apportionment of damages between Brown and the United States.

## II. PROCEDURAL HISTORY

Following the Memorandum Decision, and after the Ninth Circuit issued its mandate (ECF No. 216), the Court solicited the parties' views on how to bring this case to final resolution consistent with the Memorandum Decision (ECF No. 217). The parties agreed that they should submit briefing and revised, proposed findings of fact and conclusions of law in view of the Memorandum Decision, but disagreed about the sequencing of the briefing, page limits, and whether they should address damages. (ECF No. 218.) The Court mostly adopted Plaintiffs' proposal in terms of the sequencing of the briefing and page limits, but instructed the parties not to address the issue of damages in their briefing because the Court agreed with the United States that the issue of damages would be moot if the Court reinstated its finding from the Bench Order that Brown was the sole and proximate cause of the crash. (ECF No. 219 at 2.) The Court further stated it would either set a hearing on damages or direct further briefing on that issue if it later determined it was necessary. (*Id.* at 2-3.) And the Court otherwise set a briefing schedule. (*Id.*)

The parties timely filed their briefs and proposed findings in line with the Court's post-remand schedule it adopted. (ECF Nos. 220, 221, 222, 223, 228, 229, 230, 231.) The

Court provides its revised findings of fact and conclusions of law below based on these filings.

But before it does that, the Court summarizes the Memorandum Decision. The Ninth Circuit found that Nicoll breached his duty of care when he failed to follow Air Traffic Control ("ATC") Manual section 7-2-1 by failing "to instruct Brown to maintain visual separation and to obtain confirmation from Brown that he began applying visual separation[.]" (ECF No. 215 at 5.) However, the Ninth Circuit found the Court did not clearly err in finding that Brown was referring to "FedEx 1359, the Boeing 757 involved in Brown's fatal crash" when Brown told Nicoll that he had a visual on the airliner for the right. (*Id.* at 4 n.2.) The Ninth Circuit accordingly affirmed the Court's finding that Brown saw the plane he proceeded to maneuver too close to, which the Court previously found caused the crash. But the Ninth Circuit went on to vacate the Court's finding in the Bench Order that "Brown's negligence was the sole and proximate cause of the crash" because it "appears to have been premised in part on the district court's view that Nicoll did not act negligently." (*Id.* at 6.) And the Ninth Circuit concluded:

> On remand, the district court should reevaluate whether Brown was the sole proximate cause of the crash in light of our conclusion that Nicoll breached his duty of reasonable care. We express no opinion on whether Nicoll's breach was a substantial factor in the accident. The district court should conduct a renewed causation analysis that, if applicable, considers Nevada's doctrines of intervening cause and comparative negligence.

(*Id.*) The Court accordingly endeavors to conduct this reevaluation.

## III. FINDINGS OF FACT

The Court makes the following findings of fact based on the testimony and other evidence admitted during the Trial,[3] along with the pre-trial, post-trial, and post-appeal briefing the parties filed in this case. *See supra.*

---

[3]The parties submitted joint exhibits, marked as Nos. 1-80, as well as separate exhibits, with Plaintiffs' marked as Nos. 100-135 and the United States' marked as Nos.

3

1. The Court incorporates by reference its findings of fact one through 37 from the Bench Order as they are not affected by the Ninth Circuit's reasoning in the Memorandum Decision. (ECF No. 177 at 2-10.) Moreover, the Brown parties urge the Court to restate these findings (ECF No. 223 at 2-7) and the United States urges the Court to adopt and restate findings 4-17, along with urging the Court to restate its finding that Brown saw FedEx Flight 1359 and told Nicoll he did (ECF No. 229 at 5, 8). And the Elliker parties acknowledged this key finding in their post-remand proposed findings as well. (ECF No. 221 at 5.) Said otherwise, everyone agrees the Ninth Circuit did not disturb the Court's finding that Brown saw his traffic he later got too close to.

2. That brings the Court to the factual component of the other major dispute between the parties: whether Nicoll had transferred responsibility to Brown to maintain adequate separation from FedEx Flight 1359 before Brown's fatal encounter with its wake vortices.

3. The Ninth Circuit found that Nicoll had not. (ECF No. 215 at 3-6.) The Court accordingly vacates its prior Findings of Fact to the contrary (ECF No. 177 at 11-16 (findings of fact 38-65)) and instead makes the additional and superseding Findings of Fact below.

4. Based on the Ninth Circuit's Memorandum Decision as well as the evidence at Trial, Nicoll was not relieved of his responsibility to provide four miles of wake separation between the Bonanza (again, the plane Brown was piloting at the time of the accident) and FedEx Flight 1359, and he was required to place the Bonanza four miles behind FedEx Flight 1359. (ECF No. 215 at 3-6.) This is generally referred to as wake turbulence separation. (ECF No. 158 at 33-34.)

5. Wake turbulence separation is intended to prevent airplane crashes caused by wake turbulence. (*Id.* at 31-34.)

---

500-781. (ECF Nos. 123, 123-1, 123-2, 123-3.) "Ex." in this order refers to an exhibit admitted at Trial.

6. Nicoll did not satisfy his duty of providing a minimum of four miles of wake turbulence separation between Brown and FedEx Flight 1359. (ECF No. 164 at 60.) At one point, the two planes were about one mile apart. (Ex. 106 at 10.)

7. It is unlikely that the accident would have occurred had Brown been four miles behind FedEx Flight 1359. (ECF No. 164 at 60-61.)

## IV. CONCLUSIONS OF LAW

As noted, Plaintiffs allege that the negligence of FAA air traffic controllers at RNO was the sole cause of the crash. The Court makes the following findings of law.

1. In actions under the FTCA—such as this one—the Court must apply the whole law of the state where the negligent act or omission occurred. *See Richards v. United States*, 369 U.S. 1, 11 (1962). The accident in this case occurred in Reno, Nevada. There is no dispute that Nevada law applies to all issues in this case. (ECF Nos. 170 at 24-25, 171 at 22-23, 172 at 81.)

2. "Negligence is failure to exercise that degree of care in a given situation which a reasonable [wo]man under similar circumstances would exercise." *Driscoll v. Erreguible*, 482 P.2d 291, 294 (1971) (describing Nevada law) (citation omitted).

3. In Nevada, "[t]o prevail on a negligence theory, a plaintiff must generally show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996). Plaintiffs must establish negligence by a preponderance of the evidence. *See, e.g.*, *Arrowhead Freight Lines, Ltd. v. White*, 287 P.2d 718, 719-20 (Nev. 1955) (describing the standard in negligence cases as a preponderance of the evidence).

4. And "[w]hile general negligence law applies to airplane tort cases, the standard of due care is concurrent, resting upon both the airplane pilot and ground aviation personnel." *Spaulding v. United States*, 455 F.2d 222, 226 (9th Cir. 1972) (citations omitted). "Both are responsible for the safe conduct of the aircraft." *Id.*

5. "The air traffic controller is required to give all information and warnings specified in his manuals, and in certain situations he must give warnings beyond the manuals." *Id.* (footnotes omitted).

6. "The controller's duty to warn does not, however, relieve the pilot of his primary duty and responsibility." *Id.* "The pilot has a continuing duty to be aware of danger when he can gather adequate information with his own eyes and instruments." *Id.* at 226-27 (footnote omitted).

7. Brown was the pilot in command ("PIC") of the Bonanza at the time of the crash. (ECF No. 115 at 3.)

8. As PIC, Brown was "directly responsible for, and [was] the final authority as to, the operation of that aircraft." 14 C.F.R. § 91.3(a).

9. In addition, 14 C.F.R. § 91.13(a) provides that: "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."

10. The governing principle for pilots flying under Visual Flight Rule ("VFR") weather conditions is that they must maintain vigilance to see and avoid other aircraft. *See* 14 C.F.R. § 91.113(b) ("[V]igilance shall be maintained by each person operating an aircraft so as to see and avoid other aircraft.").

11. "While the duty in an airplane tort case is a concurrent one, resting on both the control tower personnel and the pilots, 'under VFR conditions, ultimate responsibility for the safe operations of an aircraft rests with the pilot.'" *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 840 (9th Cir. 1995) (citation omitted).

12. "Moreover, 'controllers are not required to foresee or anticipate the unlawful, negligent or grossly negligent acts of pilots.'" *Id.* (citation omitted).

13. "Under Visual Flight Rule (VFR) weather conditions, the pilot's duty to see and avoid other aircraft also includes the requirement that he exercise the same degree of caution to visualize and avoid wake turbulence encounters with other aircraft." *Mgmt.*

1  *Activities, Inc. v. United States*, 21 F. Supp. 2d 1157, 1176 (C.D. Cal. 1998) (citations omitted).

14. "Even at controlled airports where air traffic controllers help direct pilots, the primary and ultimate responsibility for safe aircraft operation under visual flight rules, including wake turbulence avoidance, rests with the pilot." *Dyer v. United States*, 832 F.2d 1062, 1070 (9th Cir. 1987) (citation omitted).

15. As an internal agency order, the ATC Manual does not carry the force of law necessary to support a negligence per se claim under Nevada law. *See Price v. Sinnott*, 460 P.2d 837, 840 (Nev. 1969). But it is still "evidence of the standard of care" and thus should be considered when evaluating the reasonable actions of an air traffic controller. *Dyer*, 832 F.2d at 1069.

16. The ATC Manual required Nicoll to provide a minimum of four miles of controller-applied radar separation between Brown and FedEx Flight 1359. *See* FAA Order 7110.65 7-2-1. Nicoll did not satisfy his duty of providing a minimum of four miles of controller-applied radar separation between Brown and FedEx 1359.

17. Nicoll could only be relieved of his duty to provide Brown with radar applied wake turbulence separation by initiating pilot-applied visual separation as set forth in the ATC Manual. *See id.* As explained supra in the Findings of Fact—and consistent with the Memorandum Decision—Nicoll did not satisfy his duty of initiating pilot-applied visual separation. Thus, Nicoll was not relieved of his duty to provide a minimum of four miles of controller-applied radar separation between Brown and FedEx Flight 1359.

18. Nicoll's failure to provide Brown with four miles of radar applied wake turbulence separation was a substantial factor in bringing about the accident.

19. Had Nicoll exercised the standard of care expected of an air traffic controller and adhered to the wake turbulence procedures required by the ATC Manual, the accident would not have happened.

///

20. Indeed, the ATC's responsibility to maintain wake turbulence separation exists to prevent airplane crashes caused by wake turbulence encounters. An airplane crash caused by a wake turbulence encounter is the very risk of harm created by Nicoll's negligence.

21. Nicoll's negligence was a proximate cause of the crash because the crash would not have occurred but for his negligence. It was a foreseeable consequence of Nicoll's negligence that had a reasonably close connection to his negligence.

22. But, "[t]here may be more than one proximate cause of an injury." *Banks ex rel. Banks v. Sunrise Hosp.*, 102 P.3d 52, 65 (Nev. 2004) (citation omitted). "When negligent conduct of two or more persons contributes concurrently as proximate causes of an injury, the conduct of each of said persons is a proximate cause of the injury regardless of the extent to which each contributes to the injury." *Id.* "A cause is concurrent if it was operative at the moment of injury and acted with another cause to produce the injury." *Id.*

23. Nicoll and Brown were concurrently negligent at the time of the crash. The negligence of both Nicoll and Brown were operative when the Bonanza encountered the wake turbulence from FedEx Flight 1359, crashed, and killed Elliker and Brown. As to Nicoll, Nicoll's negligence was a concurrent cause of the crash.

24. As to Brown, Brown was operating under VFR conditions at the time of the accident. Brown had been cleared to land and confirmed his clearance.

25. Brown's failure to avoid the wake turbulence generated by FedEx Flight 1359 also caused the crash.

26. Had Brown exercised the standard of care expected of a certified and trained pilot and adhered to standard wake turbulence avoidance procedures, the accident would not have happened.

///

///

27. Brown violated at least 14 C.F.R. § 91.13(a) and 14 C.F.R. § 91.113(b) by negligently placing himself and his passenger in a position below the flight path of FedEx Flight 1359, thus encountering its wake turbulence.

28. Indeed, as the Court found and the Ninth Circuit affirmed, Brown saw FedEx Flight 1359, and told Nicoll that he saw it. But Brown nonetheless got too close to its wake turbulence.

29. The United States has asserted the defense of superseding cause. *See Drummond v. Mid-West Growers Coop. Corp.*, 542 P.2d 198, 203 (Nev. 1975) (stating that only an intervening cause that is a superseding cause discharges a party's prior negligence). But "[a]n intervening act is a superseding cause only if it is unforeseeable." *Wood v. Safeway, Inc.*, 121 P.3d 1026, 1037 (Nev. 2005) (internal citations and quotations omitted).

30. Brown's conduct was not an intervening cause of the crash because it was reasonably foreseeable that Brown would encounter the invisible, deadly wake turbulence generated by FedEx Flight 1359. The ATC Manual has clear, specific protocols and procedures designed to avoid deadly wake turbulence encounters. Indeed, The FAA adopted 75 JO 7710.65W Ch. 7-2-1(a)(2) "to provide a safe, orderly and expeditious flow of traffic..." (ECF No. 215 at 4 n.1 (stating that this was the version of the ATC Manual in effect at the time of the accident).) When those protocols and procedures are not followed, it is reasonably foreseeable that wake turbulence encounters are more likely to occur.

31. And as discussed above, had Brown been at least four miles behind FedEx Flight 1359, Brown would likely have landed successfully on Runway 16L. Brown's negligence in getting too close to FedEx Flight 1359 came after Nicoll's negligence and could not, but for Nicoll's negligence, have caused the accident.

32. Moreover, while "the duty in an airplane tort case is a concurrent one, resting on both the control tower personnel and the pilots," *Beech*, 51 F.3d at 840, Brown's duty

to see and avoid FedEx Flight 1359's wake turbulence only arose as the direct result of Nicoll's negligent failure to provide controller-applied radar separation.

33. In sum, Plaintiffs have established each element of their negligence claims by a preponderance of the evidence.

34. Nicoll and Brown's negligence were concurrent causes of the crash.

35. Plaintiffs are accordingly entitled to damages.

36. In the Brown Parties' case, Brown's comparative negligence is a defense and provides a complete defense to the United States if Brown's negligence was greater than Nicoll's negligence. *See* NRS § 41.141(1).

37. In the Elliker Parties' case, Brown's comparative fault is not a defense. Although the United States initially asserted, in Affirmative Defenses 3 and 4, that the damages suffered by the Elliker Parties should be reduced by the amount of fault attributed to Brown, the United States later dismissed both defenses. (ECF No. 94.)

38. In the Elliker Parties' case, the United States is jointly and severally liable for the Elliker Parties' damages because Nicoll's negligence was a substantial factor in causing Elliker's death. *See Humphries v. Eighth Jud. Dist. Ct.*, 312 P.3d 484, 489-90 (Nev. 2013) ("a plaintiff may still be afforded complete relief against the liable defendant(s) he sues, regardless of the existence of other cotortfeasors").

39. The apportionment of liability is a comparative dispute in the Brown Parties' case against the United States.

40. Apportionment of liability between Nicoll and Brown is not an issue in the Elliker Parties' case.

41. Since Nicoll's negligence was a substantial factor in causing Elliker and Brown's deaths, this Court directs the parties to meet and confer about a proposal with respect to resolving the issue of damages owed to the Elliker Parties and the Brown Parties, along with the apportionment of liability between Nicoll and Brown in the Brown Parties' case.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and has determined they do not materially affect the outcome of this case.

It is therefore ordered that both Brown and Defendant the United States of America were negligent and are thus jointly and severally liable to the Elliker Plaintiffs.

It is further ordered that the Brown Parties are also entitled to damages against the United States because the United States was concurrently negligent.

The Clerk of Court is directed to vacate the prior judgments entered in this case (ECF Nos. 175, 178).

The Clerk of Court is further directed to vacate the Bench Order (ECF No. 177), though the Court specifically vacates only Findings of Fact 38-65 and the Conclusions of Law from the Bench Order (ECF No. 177 at 11-21). As noted above, the Court incorporates by reference Findings of Fact 1-37 from the Bench Order into this order and makes the additional Findings of Fact and Conclusions of Law described herein, which supersede the vacated Findings of Fact and Conclusions of Law.

It is further ordered that the parties meet and confer, and then propose in a joint status report filed within 15 days, how to bring the damages and apportionment of liability portions of this case to final resolution. The Court may set a hearing on the joint status report once it reviews it.

DATED THIS 26th Day of February 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE